Exhibit A

 **Commission of Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**    2-2020

**DATE:**    March 6, 2020

**TO:**    SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS and FACILITY MEDICAL DIRECTORS

**RE:**    Health Advisory: Novel Coronavirus (COVID-19)

---

As I am sure you are aware, a new coronavirus – 2019 Novel (New) Coronavirus – that was first detected in China is now spreading worldwide. This virus causes a disease called COVID-19 and can lead to fever, cough and shortness of breath. There are thousands of confirmed cases in a growing number of countries internationally and the virus is now spreading in the United States.

Local correctional facilities are directed to coordinate all disease control and prevention efforts with their county/city health departments, each of which is receiving appropriate guidance and assistance of the New York State Department of Health (DOH). For your reference, below please find links to important federal and state resources:

- DOH Coronavirus Hotline: 1-888-364-3065
- DOH Website: https://www.health.ny.gov/diseases/communicable/coronavirus/
- DOH Guidance: https://health.ny.gov/press/advisories/docs/2019_novel_coronavirus.pdf
- DOH Public Service Announcements:
    - https://www.youtube.com/watch?v=uqYkA7fwhxA
    - https://www.youtube.com/watch?v=QZnYfqqhMk0
- CDC Website: https://www.cdc.gov/coronavirus/2019-ncov/
- CDC Travel Advisories: https://www.cdc.gov/coronavirus/2019-ncov/travelers/index.html

As discussed in the above DOH advisory, the Novel Coronavirus may cause mild to severe respiratory symptoms like cough, fever, trouble breathing and pneumonia. Likewise, the above CDC travel advisory contains precautions with regard to the following destinations: China, Iran, South Korea, Italy and Japan. Pursuant to 9 NYCRR sections 7002.6 and 7013.7, each incarcerated individual is required to undergo a medical screening, initial screening and risk assessment immediately upon admission to elicit and record information, such as the individual's medical conditions, visible injuries, appearance and behavior, and any other relevant information concerning the safety or welfare of the individual. **To this end, it is imperative that each local correctional facility supplement its admission and visitor screening instruments and processes to include observations and questioning for the**

above-referenced symptomology, and for inquiry into recent foreign travel of the individual being screened and their family members.

Additionally, please be reminded of the existing reporting requirements that must, pursuant to 9 NYCRR Part 7022 and the *Reportable Incident Manual for County Jails and the New York City Department of Correction*, be conveyed via the eJusticeNY Integrated Justice Portal:

- Any physician-confirmed case of Novel Coronavirus (COVID-19), of either an incarcerated individual or facility personnel

- Any quarantine of a local correctional facility, or portion thereof, by a physician or local, state or federal department of health or other agency

- Any removal or relocation of an incarcerated individual or facility staff for quarantine purposes by a physician or local, state or federal department of health or other agency

- Any declared county state of emergency or the evacuation of any part of a local correctional facility

- Any admission of an incarcerated individual to a hospital

**Notwithstanding the reporting requirements set forth in the *Reportable Incident Manual*, all local correctional facilities are hereby ordered and directed, pursuant to Correction Law sections 44(4) and 46(1), to <u>immediately</u> report, via the eJusticeNY Integrated Justice Portal, any reportable incident that concerns, involves, or is caused by the Novel Coronavirus.**

Allen Riley, Chairman

# Exhibit B



**NEW YORK STATE** | **Commission of Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

# CHAIRMAN'S MEMORANDUM

**NO:**      3-2020

**DATE:**   March 18, 2020

**TO:**       SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS and FACILITY MEDICAL DIRECTORS

**RE:**       Local Correctional Facility Staffing during the COVID-19 pandemic

Pursuant to 9 NYCRR Part 7041, the Commission is charged with determining the minimum staffing requirements for local correctional facilities to ensure proper care, custody and control is maintained.  Such requirements are outlined in each facility's Position and Staffing Analysis.

In response to the COVID-19 pandemic, many counties have declared a state of emergency which, in most cases, requires non-essential county employees to work from home or take leave.  An Executive Order from Governor Cuomo, dated March 16, 2020, similarly requires local governments to allow non-essential personnel to work from home or take leave without charging accruals.  There may be some instances in which county jail security personnel have been informed they are not considered essential and may be directed not to report to work.

To clarify, the daily staff posts outlined in each jail's Position and Staffing Analysis are considered essential to ensure all services are provided and safety and security is maintained. This includes all administrative, security, and civilian posts (i.e., health services, and where applicable, maintenance) outlined in the Commission's staffing analyses.  However, in situations where areas of a facility's operations (i.e., visits, programs, etc.) have been suspended, or an entire housing unit has been closed, the Commission does not expect the corresponding posts to be filled.

Additionally, please be reminded of the existing, staffing-related reporting requirements that must, pursuant to 9 NYCRR Part 7022 and the *Reportable Incident Manual for County Jails and the New York City Department of Correction*, be conveyed via the eJusticeNY Integrated Justice Portal:

- Any physician-confirmed case of Novel Coronavirus (COVID-19) of facility personnel

- Any removal or relocation of a staff member for quarantine purposes by a physician or local, state or federal department of health or other agency

- Any death of facility personnel

- Any personnel group action that threatens the safety, security and good order of the facility, or results in the facility being unable to maintain minimum staffing levels, or affects scheduled inmate programs and/or services

      **Notwithstanding the reporting requirements set forth in the *Reportable Incident Manual*, all local correctional facilities are hereby ordered and directed, pursuant to Correction Law sections 44(4) and 46(1), to <u>immediately</u> report, via the eJusticeNY Integrated Justice Portal, any reportable incident that concerns, involves, or is caused by the Novel Coronavirus.**

_____
Allen Riley, Chairman

# Exhibit C



**Commission of Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**    4-2020

**DATE:**    March 20, 2020

**TO:**    SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, FACILITY MEDICAL DIRECTORS, CHIEFS OF POLICE, AND SSD FACILITY DIRECTORS

**RE:**    Health Advisory: COVID-19 Guidance on Supervision of the Incarcerated Population

---

The following guidance for local correctional facilities is based on the most current Centers for Disease Control and Prevention (CDC) and New York State Department of Health (DOH) recommendations for preventing the spread of the novel coronavirus of 2019 disease (COVID-19) and the management of Persons Under Investigation (PUI) for COVID-19.

This memorandum will provide guidance on the supervision of:

- Individuals in **general population**;
- Individuals **quarantined** due to responses provided during the screening process;
- Individuals **quarantined** because they came into contact with an individual who is suspected of or tested positive for COVID-19;
- Individuals who are displaying **symptoms** consistent with COVID-19; and
- Individuals who tested **positive** for COVID-19.

Please review this information with your agency leadership and staff and make any necessary adjustments to your policies and procedures in response to this rapidly evolving health crisis. Congregate facilities are especially at risk for the spread of communicable diseases due to the number of individuals living in close proximity to one another. Facilities must take steps to minimize the risk of an outbreak of COVID-19.

SCOC encourages local correctional facilities to monitor the websites for the CDC, NYS DOH and your respective local health department for new information about COVID-19. Additionally, we urge you to remain in close communication with SCOC staff who have been instructed to immediately elevate COVID-19 questions and concerns.

### GENERAL POPULATION SUPERVISION

Existing supervision requirements should be observed. Facilities should adhere to cleaning and disinfecting guidance that is available on the NYS DOH COVID-19 website: https://coronavirus.health.ny.gov/home. Social Distancing should be maintained between staff members and the incarcerated population. A distance of six feet between all individuals is

recommended. While this may present a challenge depending on the physical layout of a facility (e.g. linear, direct supervision), every effort should be made to maintain such distance.

## QUARANTINE SUPERVISION

The following guidance is provided for situations where an individual is quarantined as a precaution because of responses provided during a screening process or where a person came into contact with an individual who is suspected of or tested positive for COVID-19:

- Cell Supervision – Social Distancing should be maintained between staff members and incarcerated individuals. A distance of six feet between individuals is recommended. In housing areas consisting of cells with open bars, supervisory visits should be conducted from the "cat-walk" area, if one exists. If necessary, lighting should be adjusted (or flashlights should be used) to ensure adequate visibility. In housing areas consisting of solid doors, supervisory visits can be conducted through the door window. Food slots/cuff ports should be closed when not in use.

- Dayspace Supervision – Social Distancing should be maintained between staff members and incarcerated individuals, and between the incarcerated people themselves. A distance of six feet between all individuals is recommended. While this can present a challenge depending on the physical layout of a facility (e.g. linear, direct supervision), every effort should be made to maintain such distance.

## COVID-19 SYMPTOMATIC/POSITIVE SUPERVISION

The following guidance is provided for situations where an incarcerated individual is isolated because he or she is displaying symptoms consistent with COVID-19 (e.g. cough, fever, trouble breathing, or pneumonia) or has tested positive for COVID-19:

- Staff assigned to supervise in the same room as such inmates should be wearing Personal Protect Equipment (PPE) such as appropriate masks, gloves, goggles, etc., and any additional PPE required by their department.

- While wearing the necessary PPE in such situations, Social Distancing is not necessary, regardless of the type of housing area configuration or interaction (i.e., supervisory visits).

Additional guidance concerning healthcare precautions should be discussed with your local health department.

Allen Riley, Chairman

# Exhibit D



**Commission of Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**    5-2020

**DATE:**   April 4, 2020

**TO:**    SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, FACILITY MEDICAL DIRECTORS, CHIEFS OF POLICE, AND SSD FACILITY DIRECTORS

**RE:**    Health Advisory: Recent CDC and DOH COVID-19 Guidance Relevant to Correctional and Detention Facilities

The United States Centers for Disease Control and Prevention (CDC) recently published _Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities_. This guidance contains recommendations on several topics relevant to institutions, including: enhanced cleaning/disinfecting and hygiene practices; social distancing strategies; infection control, including recommended personal protective equipment (PPE) and potential alternatives during PPE shortages; screening of incoming incarcerated individuals; staff and visitors; and evaluation, quarantine and clinical care of confirmed and suspected cases of COVID-19.

For your further reference, the New York State Department of Health (DOH), recently published _Protocols for Essential Personnel to Return to Work Following COVID-19 Exposure or Infection_. This guidance provides recommended criteria to allow personnel who were exposed to, or are recovering from COVID-19, to work in the workplace setting if needed to maintain essential operations.

Please immediately review this information with your respective administration and local health officials, and make any necessary adjustments to your policies, procedures and operations in response to this rapidly evolving public health crisis. Detention facilities are at greater risk for the spread of communicable disease, due to the number of individuals living in close proximity to one another, facilities must take all available precautions to minimize the risk of a COVID-19 outbreak, while simultaneously maintaining a safe and secure facility.

Allen Riley, Chairman

# Exhibit E



**Commission of Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**   6-2020

**DATE:**   April 15, 2020

**TO:**   SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, FACILITY MEDICAL DIRECTORS, CHIEFS OF POLICE, AND SSD FACILITY DIRECTORS

**RE:**   Health Advisory: Executive Order 202.16 Requiring Face Coverings

---

On April 12, 2020, New York State Governor Andrew M. Cuomo issued Executive Order 202.16, which provided the following directive:

> *For all essential businesses or entities, any employees who are present in the workplace shall be provided and shall wear face coverings when in direct contact with customers or members of the public. Businesses must provide, at their expense, such face coverings for their employees. This provision may be enforced by local governments or local law enforcement as if it were an order pursuant to section 12 or 12-b of the Public Health Law.  This requirement shall be effective Wednesday, April 15 at 8 p.m.*

All security, health, and ancillary service staff of a local correctional facility, when in direct contact with incarcerated individuals and/or members of the public, must be provided and wear face coverings.  To help answer any questions on this subject, please review the New York State Department of Health's (DOH) *Interim Guidance on Executive Order 202.16 Requiring Face Coverings for Public and Private Employees Interacting with the Public During the COVID-19 Outbreak* (attached).

Note, N-95 respirators are critical supplies that must continue to be reserved for healthcare workers and other first responders. N-95 respirators should only be worn by employees who have had medical clearance and successful fit testing and are providing direct care to a patient.

Lastly, please be reminded that any request of your facility for personal protective equipment should be coordinated through the county's local Office of Emergency Management.

Allen Riley, Chairman



**NEW YORK STATE OF OPPORTUNITY.**

# Department of Health

**ANDREW M. CUOMO**
Governor

**HOWARD A. ZUCKER, M.D., J.D.**
Commissioner

**SALLY DRESLIN, M.S., R.N.**
Executive Deputy Commissioner

### Interim Guidance on Executive Order 202.16 Requiring Face Coverings for Public and Private Employees Interacting with the Public During the COVID-19 Outbreak
April 14, 2020

**Background:**

In December 2019, a new respiratory disease called the novel coronavirus (COVID-19) was detected. COVID-19 is caused by a virus (SARS-CoV-2) that is part of a large family of viruses called coronaviruses. Recently, community-wide transmission of COVID-19 has occurred in the United States, including New York where the number of both confirmed and suspected cases is increasing. To reduce the community-wide transmission of COVID-19, Governor Andrew M. Cuomo has taken aggressive action through Executive Order 202, as amended, to combat the spread of this infectious disease, reducing the density of people in areas of common congregation by closing the in-person operations of non-essential businesses and prohibiting all non-essential gatherings of individuals of any size for any reason.

**Executive Order:**

Executive Order 202.16, issued on April 12, 2020, provides the following directive:

> *For all essential businesses or entities, any employees who are present in the workplace shall be provided and shall wear face coverings when in direct contact with customers or members of the public. Businesses must provide, at their expense, such face coverings for their employees. This provision may be enforced by local governments or local law enforcement as if it were an order pursuant to section 12 or 12-b of the Public Health Law. This requirement shall be effective Wednesday, April 15 at 8 p.m.*

**Guidance:**

Essential businesses, as well as state and local government agencies and authorities, must procure, fashion, or otherwise obtain face coverings and provide such coverings to employees who directly interact with the public during the course of their work at no-cost to the employee.

- Businesses are deemed essential by the Empire State Development Corporation (ESD), pursuant to the authority provided in Executive Order 202.6. Please visit the ESD website for specific information on essential businesses. For the purpose of this guidance, essential businesses shall also provide face coverings to contractors, including independent contractors.

- Face coverings include, but are not limited to, cloth (e.g. homemade sewn, quick cut, bandana), surgical masks, N-95 respirators, and face shields. Please visit the Centers for Disease Control and Prevention's "Coronavirus Disease 2019 (COVID-19)" website for information on cloth face covers and other types of personal protective equipment (PPE), as well as instructions on use and cleaning.

- Direct interaction with the public shall be determined by the employer, but, at a minimum, shall include any employee who is routinely within close contact (i.e. six feet or less) with members of the public, including but not limited to customers or clients.

- Employees are allowed to use their own face coverings, but shall not be mandated to do so by their employer. *Further, this guidance shall not prevent employees from wearing more protective coverings (e.g. surgical masks, N-95 respirators, or face shields) if the individual is already in possession of such PPE, or if the employer otherwise requires employees to wear more protective PPE due to the nature of their work (e.g. healthcare).*

- Employees are required to wear face coverings when in direct contact with members of the public, except where doing so would inhibit or otherwise impair the employee's health. *Employers are prohibited from requesting or requiring medical or other documentation from an employee who declines to wear a face covering due to a medical or other health condition that prevents such usage.*

- Employees who are unable to wear face coverings and are susceptible to COVID-19 based on the "Matilda's Law" criteria (i.e. individuals who are 70 years of age or older, individuals with compromised immune systems, and individuals with underlying illnesses) should consult with their employer to consider reasonable accommodations, including but not limited to different PPE, alternate work location, or alternate work assignment with fewer interactions with the public. Employers should work with their employees to see if they can be accommodated to ensure the employee can continue to deliver essential services in the safest manner possible.

- If an employer is unable to procure, fashion, or otherwise obtain face coverings for their employees, they may consult with their local office of emergency management to determine if extra supplies exist within the municipality for this purpose and, if so, they may submit a request for face coverings. Please note that quantites are extremely limited and are prioritized for health care workers and first responders. *Not being able to source face coverings does not relieve an employer's obligation to provide such face coverings to their employees.*

- Nothing in this guidance shall supercede the respiratory protection equipment requirements set forth by the United States Department of Labor's Occupational Safety and Health Administration (OSHA).

**Additional Information:**
New York State Coronavirus (COVID-19) Website
https://coronavirus.health.ny.gov/

United States Centers for Disease Control and Prevention Coronavirus (COVID-19) Website
https://www.cdc.gov/coronavirus/2019-ncov/index.html

# Exhibit F



**NEW YORK STATE** | Commission of Correction

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

# CHAIRMAN'S MEMORANDUM

**NO:** 7-2020

**DATE:** April 25, 2020

**TO:** SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, FACILITY MEDICAL DIRECTORS, CHIEFS OF POLICE, AND SSD FACILITY DIRECTORS

**RE:** Health Advisory: Discontinuation of Isolation for Patients with COVID-19

The New York State Department of Health recently published the attached *Health Advisory: Discontinuation of Isolation for Patients with COVID-19 Who Are Hospitalized or in Nursing Homes, Adult Care Homes, or Other Congregate Settings with Vulnerable Residents*.  This guidance provides recommended criteria to be used by local correctional facility health staff when discontinuing the isolation of an incarcerated individual previously diagnosed with COVID-19.

Please immediately review this information with your respective administration and local health officials, and make any necessary adjustments to facility policies, procedures, and operations in response to this rapidly evolving public health emergency.

Allen Riley, Chairman



**NEW YORK STATE OF OPPORTUNITY.**

**Department of Health**

**ANDREW M. CUOMO**
Governor

**HOWARD A. ZUCKER, M.D., J.D.**
Commissioner

**SALLY DRESLIN, M.S., R.N.**
Executive Deputy Commissioner

**DATE:**   April 19, 2020

**TO:**   Hospitals, Nursing Homes, Adult Care Homes, and Other Congregate Settings Where Populations Vulnerable to COVID-19 Reside

**FROM:**   NYS Department of Health (NYSDOH) Bureau of Healthcare Associated Infections (BHAI)

---

**Health Advisory: Discontinuation of Isolation for Patients with COVID-19 Who Are Hospitalized or in Nursing Homes, Adult Care Homes, or Other Congregate Settings with Vulnerable Residents**

**Please distribute immediately to:**
Administrators, Infection Preventionists, Medical Directors, and Nursing Directors

---

Recent guidance allows for discontinuation of isolation for patients with COVID-19 when they meet the following conditions:

- At least 3 days (72 hours) have passed since recovery, defined as resolution of fever without the use of fever-reducing medications; **AND**
- Improvement in respiratory symptoms (e.g., cough, shortness of breath); **AND**
- At least 7 days have passed since symptoms first appeared.

However, hospitalized patients or older adults may have longer periods of infectivity, and hospitals, nursing homes, adult care facilities, and certain other congregate living facilities, are settings with highly vulnerable patients and residents.  Therefore, for patients who are admitted to or remain in these settings, NYSDOH recommends discontinuation of transmission-based precautions for patients with COVID-19, when they meet the following more stringent conditions:

- Non-test-based strategy:
    - At least 3 days (72 hours) have passed since recovery, defined as resolution of fever (greater than or equal to 100.0) without the use of fever-reducing medications; **AND**
    - Improvement in respiratory symptoms (e.g., cough, shortness of breath); **AND**
    - At least **14 days** have passed since symptoms attributed to COVID-19 first appeared.
        - For patients who were asymptomatic at the time of their first positive test and remain asymptomatic, at least 14 days have passed since the first positive test.

- Test-based strategy:  If testing is available to a facility through in-house or commercial means, the following test-based strategy may also be considered.
    - Lack of fever (greater than and equal to 100.0), without fever-reducing medications; **AND**
    - Improvement in respiratory symptoms (e.g., cough, shortness of breath); **AND**
    - Negative results of an FDA Emergency Use Authorized COVID-19 molecular assay for detection of SARS-CoV-2 RNA, from at least two consecutive tests

conducted on recommended specimens (nasopharyngeal, nasal and oropharyngeal, or nasal and saliva), collected greater than or equal to 24 hours apart.

o   For patients who were asymptomatic at the time of their first positive test and remain asymptomatic, testing for release from isolation may begin a minimum of 7 days from the first positive test.

These recommendations also apply to persons suspected of having COVID-19.  The test-based strategy is strongly preferred for severely immunocompromised patients (e.g. treated with immunosuppressive drugs, stem cell or solid organ transplant recipients, inherited immunodeficiency, or poorly controlled HIV).  If the test strategy is not used for individuals severely immunocompromised, the case should be discussed with the local health department or with NYSDOH.

Patients who remain in, or are admitted, to a nursing home, adult care facility, or other congregate living facility with vulnerable residents, and meet criteria for discontinuation of transmission-based precautions using the non-test-based strategy but who remain symptomatic, such as with a persistent cough, should be: (1) placed in a single room or be cohorted with other recovering residents who had confirmed COVID-19; (2) remain in their room; and (3) wear a facemask when caregivers enter the room.

General questions or comments about this advisory can be sent to covidhospitaldtcinfo@health.ny.gov, covidnursinghomeinfo@health.ny.gov, covidadultcareinfo@health.ny.gov, or icp@health.ny.gov.

2

# Exhibit G



**Commission of
Correction**

ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**   9-2020

**DATE:**   October 28, 2020

**TO:**   SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, FACILITY MEDICAL DIRECTORS, CHIEFS OF POLICE, AND SSD FACILITY DIRECTORS

**RE:**   Health Advisory: Limitations on Correctional Facility Visitation via the Cluster Action Initiative

---

Executive Order No. 202.68, issued October 9, 2020, established the *Cluster Action Initiative*, which aims to identify and cease the spread of COVID-19 by addressing outbreaks of new cases within a limited and definable geographic area. Designations of a Red Micro-Cluster Zone, an Orange Warning Zone, or a Yellow Precautionary Zone are based on metrics indicating substantial COVID-19 spread, and result in corresponding restrictions and limitations on non-essential gatherings, in-school instruction, etc. within these zones.

Attached please find recent guidance from the New York State Department of Health, informing operators of congregate residential facilities (including correctional and juvenile justice facilities) of required limitations on visitation for facilities located in Red and Orange zones.

Please immediately review this information with your respective administration and local health officials, and make any necessary adjustments to your policies, procedures and operations in response to this rapidly evolving public health emergency. As detention facilities are especially at risk for the spread of communicable disease, due to the number of individuals living in close proximity to one another, facilities must take all available precautions to minimize the risk of a COVID-19 outbreak, while simultaneously maintaining a safe and secure facility.

Please refer to this link to determine if your facility falls within a Red or Orange zone: https://covidhotspotlookup.health.ny.gov/#/home.

Allen Riley, Chairman



**Department of Health**

ANDREW M. CUOMO
Governor

HOWARD A. ZUCKER, M.D., J.D.
Commissioner

LISA J. PINO, M.A., J.D.
Executive Deputy Commissioner

**DATE:** October 23, 2020
**TO:** Facility Operators and Administrators
**FROM:** New York State Department of Health

---

### Health Advisory: All Residential Congregate Facilities

**Please distribute immediately to:
Operators, Administrators, Directors of Nursing, Medical Directors,
Activities Professionals**

---

**Background**

Since the onset of the COVID-19 public health emergency, New York State has relied on data and metrics, science, and public health expertise to make all decisions impacting public health. With the fall and winter approaching, Governor Cuomo has introduced a new data-based strategy of aggressively responding to micro-clusters in order to limit COVID-19 spread via the Cluster Action Initiative.

With one of the lowest baseline rates of COVID-19 transmission in the country, New York has the opportunity to identify and limit spread of COVID-19 by addressing "micro-clusters," which are outbreaks of new cases within a limited and definable geographic area.

This Initiative focuses response in defined geographic areas, thereby addressing transmission on a focused basis and preventing broader viral transmission that would result in widespread economic shutdowns. Areas that meet metrics demonstrating substantial COVID-19 spread may be designated either a Red Micro-Cluster Zone, an Orange Warning Zone, or a Yellow Precautionary Zone.

On October 9, 2020, Governor Andrew M. Cuomo issued EO No. 202.68 which, among other things, established red, orange, and yellow zones and imposed restrictions and limitations on non-essential gatherings, participant occupancy in houses of worship, indoor/outdoor dining, and in-person schools within these zones.

**Purpose**

The purpose of this guidance is to inform operators of congregate facilities, including state or local agencies, or not for profit service providers of limitations on visitation in residential congregate settings located in "red" and "orange" zones subject to Cluster Action Initiative restrictions as established pursuant to Executive Order (EO) No. 202.68. In order to ensure safety of residents and staff of facilities housing congregate populations, these visitation restrictions shall be effective at 3 pm on Sunday, October 25, 2020, and shall remain in effect the duration a facility remains in such zone. Unless superseded by this guidance, all other state agency guidance and policies with respect to visitation remain in effect.

**Residential congregate facilities** for purposes of this guidance include:

- Nursing homes
- Adult care facilities and Adult homes

- Pediatric skilled nursing facilities
- Facilities for individuals with developmental disabilities (OPWDD run, licensed or regulated homes)
- Facilities for individuals affected by substance use (OASAS run, licensed, or regulated facilities)
- Facilities for individuals in receipt of mental health services (OMH run, licensed or regulated facilities)
- Residential treatment centers (OCFS run, licensed, or regulated facilities)
- Juvenile justice facilities
- Hospitals
- Correctional facilities

Effective immediately, in red and orange zones, congregate residential facilities must limit visitation in accordance with the following guidance:

## Red Zones

All visitation is suspended in residential congregate facilities located in red zones, except for in the following instances: compassionate care (including end of life/hospice situations), medically or clinically necessary (i.e. visitor is essential to the care of the patient), accompanying a minor in a pediatric facility, labor/delivery/post-partum care, necessary legal representatives, and essential companions to individuals with intellectual and/or developmental disabilities or with cognitive impairments, including dementia.

## Orange Zones

Visitation shall be suspended at a residential congregate facility in an orange zone if a staff member or resident in the facility has tested positive for COVID-19 in the last 14 days, except for in the following instances: compassionate care (including end of life/hospice situations), medically or clinically necessary (i.e. visitor is essential to the care of the patient), accompanying a minor in a pediatric facility, labor/delivery/post-partum care, necessary legal representatives, and essential companions to individuals with intellectual and/or developmental disabilities or with cognitive impairments, including dementia.

This supersedes other local health department orders which may impact visitation in these zones.

Thank you for your ongoing support and cooperation in responding to COVID-19 concerns. For more information visit https://coronavirus.health.ny.gov/home.

# Exhibit H



ALLEN RILEY
Chairman

THOMAS J. LOUGHREN
Commissioner

## CHAIRMAN'S MEMORANDUM

**NO:**    1-2021

**DATE:**    January 6, 2021

**TO:**    SHERIFFS, COMMISSIONERS OF CORRECTION, JAIL ADMINISTRATORS, WARDENS, JAIL PHYSICIANS, and FACILITY MEDICAL DIRECTORS

**RE:**    COVID-19 Vaccination Availability for Jail Health Staff

The New York State Department of Health (NYSDOH) is continuing to expand on its prioritization and allocation framework based on guidance from the Centers for Disease Control and Prevention's (CDC's) Advisory Committee on Immunization Practices (ACIP). As of January 2021, eligibility for receiving the vaccination in phase 1A is being expanded to include all outpatient/ambulatory front-line, high-risk health care workers who provide direct in-person patient care, as well as all public health care workers who provide direct in-person care, including those who conduct COVID-19 tests and handle lab specimens. Beginning this week, eligibility will also be expanded to include home care workers and aides, hospice workers, personal care aides, consumer-directed personal care workers and nursing home, adult care facility and other congregate setting workers.

As a result of this expansion, all jail medical personnel are now eligible to receive the vaccination, including, but not limited to, clinical physicians, nurse practitioners, physician assistants, registered nurses, nurse administrators, Senior Utilization Review Nurses, Infection Control Nurses, LPNs, dentists, dental assistants and hygienists, optometrists, pharmacy supervisors, pharmacists, pharmacy aides, medical lab tech, psychiatrists, psychologists and other behavioral health workers.

New York State has launched a new "Am I Eligible" app to help New Yorkers determine their eligibility. connect them with administration centers, and schedule appointments. To access the app, as well as find the latest information concerning the vaccine and its administration, jail medical staff should visit: https://am-i-eligible.covid19vaccine.health.ny.gov/

Once scheduled for a vaccination, health staff must provide proof of occupation/eligibility to the vaccination site. This could include an employee ID card, a letter from an employer or affiliated organization, or a pay stub, depending on the specific priority status.  Providers will not vaccinate any person who does not have proof of their occupation or priority status. Executive Order 202.86 imposes monetary penalties for any provider vaccinating an individual who has not certified eligibility or for who the provider otherwise has knowledge the individual is not a member of a priority group. The NYSDOH vaccine form includes a self-attestation regarding

eligibility for vaccination, which must be completed prior to vaccination. Eligibility for the vaccine must be based on current employment status.

The development of COVID-19 vaccines marks a new phase for the entire country in the battle against this insidious disease, which has claimed hundreds of thousands of lives in our country alone.  Vaccination is what may ultimately save your life, as well as help protect you and your loved ones from becoming seriously ill, if you are exposed to COVID. You have a responsibility to protect yourself, as well as to help prevent the spread of the virus. You can do this by getting vaccinated and by complying with COVID-19 guidelines. Attached is a one-page vaccine instruction overview issued by the Department of Health for your information. After being vaccinated, it is important that you continue to follow all safety precautions, both in the workplace and in the community, including the continued wearing of a mask, social distancing and good hand hygiene.

The Commission of Correction takes seriously its mission to provide for a safe, stable and humane correctional system in New York State, which includes the safety and well-being of facility employees, their families, the surrounding communities and the incarcerated population. The Commission trusts that the administrations and staff of New York's local correctional facilities will continue to lead in the fight against COVID-19 by getting vaccinated and complying with COVID-19 guidelines. If you have any general questions regarding the vaccine, please contact your healthcare provider or visit the NYS COVID-19 Vaccine website at: https://covid19vaccine.health.ny.gov/

Allen Riley, Chairman



**NEW YORK** STATE OF OPPORTUNITY.

**Department of Health**

ANDREW M. CUOMO
Governor

HOWARD A. ZUCKER, M.D., J.D.
Commissioner

LISA J. PINO, M.A., J.D.
Executive Deputy Commissioner

### Instructions for Receiving COVID-19 Vaccine
### New York State Vaccination Program
### Phase 1A

It may soon be your turn to receive the COVID-19 vaccine in New York State!

There are currently two COVID-19 vaccines available, and both have been deemed safe and effective by the Food and Drug Administration (FDA) and a special task force made up of New York State medical and scientific experts.

The vaccines are also available at no cost to you.

You will need two doses of the same vaccine to be fully vaccinated.

Here's an easy way to find out whether it's your turn:  Follow this website link to see if you are eligible for a vaccine. Please go to https://am-i-eligible-qa.covid19vaccine.health.ny.gov/ to find out.

The web page will ask for information such as your name, where you live, and what you do for a living. If you are in a priority group currently eligible for vaccination, the site will show you the location of nearby health care providers who can give you the vaccine.  Just choose the one you prefer, and schedule the appointment.

If it's not yet your turn, you can check back anytime to find out when the time is right.

If you have any other questions about this process or general questions about the vaccine, please go to https://covid19vaccine.health.ny.gov/frequently-asked-questions or to https://covid19vaccine.health.ny.gov/what-you-need-know to learn more.

No vaccine is 100% effective. While you wait to get the vaccine and even in the weeks **after** receiving both required doses, you must make sure to continue to:

- Wear a mask
- Socially distance from others (at least 6 feet apart)
- Practice good hand hygiene

# Exhibit I



State of New York

Executive Chamber

No. 202.16

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 12, 2020 the following:

- Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals to perform testing for the detection of SARS-CoV-2, or its antibodies, in specimens collected from individuals suspected of suffering from a COVID-19 infection; individuals performing testing must meet the federal requirements for testing personnel appropriate to the assay or device authorized by the FDA or the New York State Department of Health;

- Section 711 of the Real Property and Proceedings Law, Section 232-a of the Real Property Law, and subdivisions 8 and 9 of section 4 of the Multiple Dwelling Law, and any other law or regulation are suspended and modified to the extent that such laws would otherwise create a landlord tenant relationship between any individual assisting with the response to COVID-19 or any individual that has been displaced due to COVID-19, and any individual or entity, including but not limited to any hotel owner, hospital, not-for-profit housing provider, hospital, or any other temporary housing provider who provides temporary housing for a period of thirty days or more solely for purposes of assisting in the response to COVID-19;

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster emergency, I hereby issue the following directives for the period from the date of this Executive Order through May 12, 2020:

- The New York City Department of Law shall issue no-action or no-filing letters received during the duration of this executive order within 45 days from submission of such no-action or no-filing application made to the department of law for essential projects involving affordable housing and homeless shelters. For each application granted by the department of law which permits the applicant to solicit public interest or public funds preliminary to the filing of an offering statement or for the issuance of a "no-filing required" letter. The New York City Department of Finance shall process and record condominium declarations for essential projects involving hospitals or health care facilities, affordable housing, and homeless shelters within 30 days of receipt of such filing.

- Any political party, political party authority or political party official, which, by virtue of any law has a caucus scheduled or otherwise required to take place in April or May of 2020, shall be postponed until June 1, 2020, without prejudice, however such caucus may continue if the caucus is able to be held remotely, through use of telephone conference, video conference, and/or other similar service, and provided that notice for any party caucus to be held remotely shall be deemed satisfied if such notice includes specific information on remote participation and has been filed with the clerk and board of elections at least five days preceding the day of the caucus and published either by newspaper publication thereof once within the village, or on the party's website, or through electronic mail to any previous caucus participant for which the party has an electronic mail address.

- For all essential businesses or entities, any employees who are present in the workplace shall be provided and shall wear face coverings when in direct contact with customers or members of the public. Businesses must provide, at their expense, such face coverings for their employees. This provision may be enforced by local governments or local law enforcement as if it were an order pursuant to section 12 or 12-b of the Public Health Law. This requirement shall be effective Wednesday, April 15 at 8 p.m.



G I V E N under my hand and the Privy Seal of the

State in the City of Albany this

twelfth day of April in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor

# Exhibit J



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EMERGENCY EXECUTIVE ORDER NO. 100

March 16, 2020

EMERGENCY EXECUTIVE ORDER

WHEREAS, on March 7, 2020, New York State Governor Andrew Cuomo declared a State disaster emergency for the entire State of New York to address the threat that COVID-19 poses to the health and welfare of New York residents and visitors; and

WHEREAS, Emergency Executive Order No. 98, issued March 12, 2020, contains a declaration of a state of emergency in the City of New York due to the threat posed by COVID-19 to the health and welfare of City residents, and such declaration remains in effect for a period not to exceed thirty (30) days or until rescinded, whichever occurs first; and

WHEREAS, on March 6, 2020, the New York State Commission of Correction issued a Chairman's Memorandum directing local correctional facilities to coordinate disease control and prevention efforts with their county and city health departments; and

WHEREAS, on March 14, 2020, the New York State Department of Correction and Community Supervision suspended visitation at all correctional facilities statewide until April 11, 2020; and

WHEREAS, when members of the public seek to visit individuals in custody, public health is imperiled by the person-to-person spread of COVID-19, which would be devastating to the health, safety and security of the individuals who live in, work in, and visit Department of Correction facilities; and

WHEREAS, the risk of community spread throughout New York City impacts the life and health of the public and public health is imperiled by the person-to-person spread of COVID-19; and

WHEREAS, the reduction of opportunities for the person-to-person transmission of COVID-19 in meetings and other gatherings is necessary to combat the spread of this disease; and;

WHEREAS, this order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage; and

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby suspend:

a. Section 42 of the Charter, to the extent such section requires that all meetings of the City Council be held as provided in its rules, and that the City Council hold no less than two (2) stated meetings each month; and

b. Section 247 of the Charter, to the extent such section requires the City Council to hold hearings and submit and publish recommendations and findings regarding the preliminary budget no later than March 25, 2020.

§ 2. I hereby direct that the following laws and rules related to the Uniform Land Use Review Procedure, the landmarks designation processes and other procedures applicable to the City planning and land use review processes, to the extent they impose limitations on the amount of time permitted for the holding of public hearings, the certification of applications, the submission of recommendations, any required or necessary voting, the taking of final actions, and the issuance of determinations, are suspended, and that any such time limitations are tolled for the duration of the State of Emergency: sections 195, 197-d, and 3020 and subdivisions (b) through (h) of section 197-c of the Charter, sections 25-303, 25-306, 25-308, 25-309, 25-310 and 25-313 of the Administrative Code, and sections 1-05.5 and 1-07.5 of Title 2 and sections 2-02 through 2-07 of Title 62 of the Rules of the City of New York.

§ 3. I hereby direct, to the extent such laws and rules may be suspended consistent with State law, that the following laws and rules related to procurement are suspended to the extent necessary for the City to procure necessary goods, services and construction in response to the emergency: Chapter 13 of the New York City Charter; Chapter 9 of the Procurement Policy Review Board Rules; and Sections 6-101 through 6-107.1, 6-108.1 through 6-121, and 6-124 through 6-129 of the New York City Administrative Code.

§ 4. I hereby cancel the special election to be held on March 24, 2020 to fill the vacancy in the Office of Borough President of Queens and elect a Borough President to serve until December 31, 2020. This order shall not affect the primary and general elections scheduled pursuant to my January 2, 2020 proclamation of election.

§ 5. I hereby direct New York City Health and Hospitals Corporation ("NYC Health + Hospitals") to immediately move to cancel or postpone elective procedures system-wide and to cease performing such procedures within 96 hours of the issuance of this Order. NYC Health + Hospitals is directed to identify procedures that are deemed "elective" by assessing which

procedures can be postponed or cancelled based on patient risk considering the emergency need for redirection of resources to COVID-19 response.

§ 6. I hereby direct other hospitals and ambulatory surgery centers in New York City to immediately move to cancel or postpone elective procedures and to cease performing such procedures within 96 hours of the issuance of this Order. Hospitals and ambulatory surgery centers are directed to identify procedures that are deemed "elective" by assessing which procedures can be postponed or cancelled based on patient risk considering the emergency need for redirection of resources to COVID-19 response.

§ 7. I hereby direct all establishments -- including restaurants, bars, cafes - that offer food or drink shall close until further notice, effective Monday, March 16, 2020 at 8:00 PM. To ensure sufficient access to food and/or drink, establishments serving food and/or drink (including restaurants, bars, and cafes) may remain open for the sole purpose of providing take-out or delivery service, provided the establishments do not exceed fifty percent of their occupancy or seating capacity while persons are waiting for take-out and that such persons follow social distancing protocols.

§ 8. Additionally, all entertainment venues, including those with seating capacity below 500, are hereby closed effective Monday, March 16, 2020 at 8:00 PM. Entertainment venues shall include, but not be limited to movie theaters, clubs, cinemas, theatres and concert venues.

§ 9. Additionally, all commercial gyms are closed effective Monday, March 16, 2020 at 8:00PM.

§10. I hereby authorize all agencies to continue enforcing Emergency Executive Order 99 and any additional limitations on large gatherings that may be imposed by the Governor of New York State pursuant to his powers under §29-a of the Executive Law.

§11. I hereby suspend Section 1-09 of Title 40 of the Rules of the City of New York to the extent that such section prevents the Department of Correction from engaging in emergency response measures in relation to the person-to-person transmission of COVID-19 in the City of New York.

§ 12. I hereby suspend Section 1-07 of Title 40 of the Rules of the City of New York to the extent that such section prevents the Department of Correction from engaging in emergency response measures in relation to the person-to-person transmission of COVID-19 in the City of New York.

§ 13. I hereby suspend Section 1-08 of Title 40 of the Rules of the City of New York to the extent that such section prevents the Department of Correction from engaging in emergency response measures in relation to the person-to-person transmission of COVID-19 in the City of New York.

§ 14. I hereby suspend Section 9-110 of the Administrative Code to the extent that such section prevents the Department of Correction from engaging in emergency response measures in relation to the person-to-person transmission of COVID-19 in the City of New York.

3

§ 15. I hereby suspend Section 1-15 of Title 40 of the Rules of the City of New York to the extent that such section applies to the aforementioned suspensions of sections 1-07, 1-08, and 1-09, in order to allow the Department of Correction to engage in emergency response measures in relation to the person-to-person transmission of COVID-19 in the City of New York.

§ 16. I hereby direct the Commissioner of the Department of Correction to take all appropriate steps to facilitate alternative methods for detainees to maintain contact with friends and family, communicate with media representatives, access the law library and legal counsel, and engage in congregate religious activities, including but not limited to providing, where possible, video and teleconference services, unlimited, free phone calls, and free stamps and letter-writing materials.

§ 17. I hereby direct that all older adult congregate centers operating within the City, whether publicly or privately owned or funded, shall be closed and all programs suspended for the duration of the state of emergency now in effect. In order to provide access to food for older adults, any such center may continue to operate to the extent necessary to prepare and distribute meals.

§ 18. I hereby direct all agency heads, including Emergency Management, the Department of Health and Mental Hygiene, Community Affairs, Fire, Police, Sanitation, Buildings and Transportation to take all appropriate and necessary steps to preserve public safety and the health of their employees, and to render all required and available assistance to protect the security, well-being and health of the residents of the City.

§ 19. In accordance with Executive Law § 24 and New York City Administrative Code 3-108, any person who knowingly violates the provisions in Sections 5 through 13 of this order shall be guilty of a class B misdemeanor.

§ 20. This Emergency Executive Order shall take effect immediately, and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Bill de Blasio,
MAYOR

Exhibit K

# HOW TO ACCESS LAW LIBRARY SERVICES

**In an effort to reduce the possible spread of COVID-19 and to keep everyone safe, effective Tuesday, March 24, 2020 you will be provided Law Library services within your housing unit.**

If you wish access to Law Library services, you will need to complete a Request Slip for Law Library Services. You can obtain the slip from your housing unit officer. You are to indicate on the request slip what information you want or the Law Library service that you need. The completed slip can be turned into your unit officer or submitted to Law Library staff when they come to your unit to collect all slips. The Legal Coordinator will review each request slip and perform the research needed to obtain the information requested. The information obtained in response to your request will be sent back to you in your housing unit.

Law Library staff will collect Law Library Request Slips each day of scheduled Law Library operation, Tuesday through Saturday. The information requested will be provided to you the same day or the next day of operation. Requests that require extensive research will be fully completed within 5 days of initial request.

At this time, you will not be provided access to the Law Library area to perform legal research. If you need to type or view electronic discovery you will be provided access to the Law Library area for the limited purpose of performing such tasks. Access to the Law Library area will depend on the availability of uniformed staff.

**Director of Law Libraries**